IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH TAYLOR, | ) | |
| individually and on behalf of all | ) | |
| other similarly situated individuals, | ) | |
| | ) | Civil Action No. 1:15-cv-04461-LMM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FTS USA, LLC, and | ) | |
| Unitek USA, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION

Plaintiff Joseph Taylor has brought this suit on behalf of himself and other similarly situated cable installation technicians who have worked for Defendants Unitek and FTS, seeking to recover unpaid overtime and minimum wages. The proposed class of cable installation technicians performed similar duties and were subject to the same unlawful policies and practices implemented by Defendants in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. Specifically, the technicians (1) performed cable installations, repairs and upgrades; (2) were paid at a piece rate; (3) were subject to a company-wide "time shaving"

policy that required them to systematically underreport their overtime hours and (4) as a result, worked uncompensated hours in excess of forty per week.  Accordingly, Plaintiff seeks conditional certification of a collective action pursuant to Section 216(b) of the FLSA to provide timely notice to similarly situated FTS and Unitek technicians so that they may exercise their rights to join this collective action under the FLSA.

This Court should grant Plaintiff's motion for conditional certification and allow opt-in notices to issue because, as set out below, Plaintiff has met his burden of making a modest factual showing that Defendants use a common policy of compensating their employees on a piece rate basis and requiring technicians to shave time off of their reported work hours, and that there is a similarly situated group of employees entitled to notice of this action. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008).

If there was any doubt concerning Defendants' company-wide violation of the FLSA, or the propriety of collective treatment of the technicians' FLSA claims, those doubts are erased by the recent decision of the Sixth Circuit in Monroe v. FTS USA, LLC, No. 14-6063, 2016 WL 814329 (6th Cir. Mar. 2, 2016) (opinion attached as Exhibit A).  In 2008, a similar group of FTS technicians filed suit against these same Defendants asserting identical FLSA claims as those asserted here.  The

District Court determined that collective treatment of the FLSA claims was appropriate at the notice stage, see Monroe v. FTS USA, LLC, 257 F.R.D. 634 (W.D. Tenn. 2009), and later denied Defendants' motion to decertify the collective action. See Monroe v. FTS USA, LLC, 2016 WL 814329, at *2.  The case went to trial in the fall of 2011, and plaintiffs obtained judgment of nearly $4 million on behalf of a class of approximately 300 technicians.  Id. at *1.  The Sixth Circuit has recently affirmed the certification of the case as a nationwide collective action, affirmed the District Court's finding that there was sufficient evidence to support the verdict, and remanded for recalculation of the overtime damages of the Opt-in Plaintiffs. Id. Central to the court's holding was the plaintiffs' showing that FTS "implemented a single, company-wide time-shaving policy to force all technicians—either through direct orders or pressure and regardless of location or supervisor—to underreport overtime hours worked on their timesheets."  Monroe v. FTS USA, LLC, 2016 WL 814329, at *10.

The filings in the present case make it clear that Defendants continued their unlawful policy for years after the verdict in the Western District of Tennessee.  As a result, there are likely thousands more FTS technicians who suffered under this same unlawful time shaving policy, but who never received notice of the prior action

and whose claims arose after the verdict in favor of plaintiffs in that case, such as the named Plaintiff and Opt-in Plaintiff to this action.

In light of this substantial group of similarly situated FTS technicians with meritorious claims against Defendants, the Court should issue notice of this action as quickly as possible, since the filing of the complaint does not toll the statute of limitations for FLSA "opt-in" plaintiffs.  See 29 U.S.C. § 256(b). "[P]rospective plaintiffs under FLSA must expressly consent to join the class," Prickett v. DeKalb County, 349 F.3d 1294, 1296 (11th Cir. 2003), and the statute of limitations will continue to run for potential plaintiffs until they opt into the case. See also Morgan v. Fam. Dollar Stores, Inc., 551 F.3d 1233, 1258 (11th Cir. 2008). Notice is therefore essential to enabling potential plaintiffs to assert their rights under the FLSA and, as the Supreme Court has noted, the issuance of early notice helps the court manage the case, allowing it to "ascertain the contours of the action at the outset." Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 172-73 (1989).

## A. Factual Background

Defendant FTS USA, LLC ("FTS") provides cable installation services, and has operated, at various times, in a number of locations throughout the country, including Alabama, Texas and Georgia.  See FTS website printout, attached as Exhibit B; Declaration of Joseph Taylor, attached hereto as Exhibit C, ¶ 2.

Defendant Unitek USA, LLC ("Unitek") is the parent company of FTS, and provides human resource and payroll services for FTS. See Unitek website printout, attached as Exhibit B; Monroe v. FTS USA, LLC, 763 F.Supp.2d 979, 983 (W.D. Tenn. 2011); Monroe, 257 F.R.D. at 636. FTS has contracts with several cable television providers (see Monroe, 763 F.Supp.2d at 983), and relies on cable installation technicians such as Plaintiff to perform these services.

Plaintiff Joseph Taylor and Opt-in Plaintiff Reuben Tatum have worked for Defendants as cable installation technicians in Texas, Alabama, and Georgia. Exh. C, ¶ 2; Declaration of Reuben Tatum, attached as Exhibit D, ¶ 2. Plaintiffs performed installation, repairs and upgrades of various cable systems, such as Comcast and Time Warner Cable. Exh. C, ¶¶ 4, 6-7; Exh. D, ¶ 5. Plaintiffs worked six or seven days a week, often working more than 60 hours a week. Exh. C, ¶¶ 3-4, 6-8; Ex. D ¶ 4. For example, in the first few weeks of December 2013, Taylor worked over 70 hours a week. Exh. C, ¶ 9. Plaintiffs were paid a piece rate for each task they performed. Exh. C ¶¶ 4, 7; Exh. D, ¶ 5. Plaintiffs either recorded their work time on a timesheet, or "punched in" and "punched out" using an electronic ADP system. Exh. C, ¶¶ 4, 6, 10; Exh. D, ¶ 6.

Plaintiffs were not paid for all their time worked; and while Plaintiff Taylor was paid some overtime, he was not paid for all his hours worked in excess of 40.

Exh. C, ¶¶ 5, 12-13; Exh. D, ¶¶ 6-7. Opt-in Plaintiff Tatum was not paid any overtime. Exh. D, 8. Plaintiffs and other cable installation technicians, at all three locations where Plaintiffs worked, were instructed by their managers and supervisors not to record all of their hours, with the promise of receiving better assignments if they did not record hours in excess of 51 a week. Exh. C, ¶¶ 5-6, 12; Exh. D, ¶ 6. Plaintiffs' supervisors explained that this was due to Unitek and FTS company policy of not wanting to pay for overtime hours. Exh. C, ¶¶ 4, 11-12; Exh. D, ¶ 6. In fact, Plaintiff Taylor's supervisor in Georgia went so far as to require technicians who had recorded more than 50 hours in a week to take a day off. Exh. C, ¶ 11. Opt-in Plaintiff Tatum's supervisor took time off Plaintiffs' timesheet, while Plaintiff Taylor preemptively "shaved" time off his timesheet. Exh. C, ¶¶ 6, 12; Exh. D, ¶ 7. As a result of Defendants' policy of not compensating technicians for all hours worked, Plaintiffs were not paid overtime for all hours worked in excess of 40 a week, and their pay sometimes fell below minimum wage because of these uncompensated hours. Exh. C, ¶¶ 5, 13; Exh. D, ¶ 7.

The experiences of Taylor and Tatum in Texas, Alabama, and Georgia confirm the company-wide time shaving policy through which FTS required cable technicians to underreport their hours. The breadth of this policy is also demonstrated by the Declaration of a former FTS Field Supervisor, Shawn Parker,

attached as Exhibit E.  Mr. Parker was a Field Supervisor for FTS in Texas from approximately 2009 through 2012.  Exh. E, ¶ 2.  He participated in telephone calls with his FTS Regional Director and Project Manager in which he and other Field Supervisors were instructed to require technicians to underreport their hours.  Exh. E, ¶¶ 5-6.  Those technicians who did not underreport, and claimed too many hours on their time sheets, would be penalized because FTS would either refuse to assign them jobs for the next day, or would assign them lower-paying jobs so they would want to quit.  Exh. E, ¶ 8.

When all of this evidence is viewed in light of the testimony and jury verdict in the previous collective action against FTS and Unitek in the Western District of Tennessee, it is abundantly clear that Defendants implemented a persistent company-wide policy of encouraging and requiring technicians to underreport their hours, thereby denying them minimum wage and overtime under the FLSA. Plaintiffs have thus exceeded the mere "modest factual showing" that there are similarly situated workers who should receive notice of their rights to join this action.

## B. The Standard for Conditional Certification

To manage FLSA collective actions at the pretrial phase, the Eleventh Circuit has "sanctioned a two-stage procedure for district courts."  Morgan v. Family Dollar

Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008).  The first step, which takes place

before discovery begins, is the "notice phase."[1]  Id.  "Here, a district court determines

whether other similarly situated employees should be notified."  Id.  At the notice

phase, the district court determines, "'usually based only on the pleadings and any

affidavits which have been submitted'" whether the plaintiff and the class of

employees he wishes to represent are "similarly situated."[2]  Hipp v. Liberty Nat. Ins.

Co., 252 F.3d 1208, 1218 (11th Cir. 2001).  This assessment takes place before

discovery. See Ide v. Neighborhood Rest. Partners, LLC, 32 F. Supp. 3d 1285, 1290-

91 (N.D. Ga. 2014) (quoting Pickering v. Lorillard Tobacco Co., Inc., 2012 WL

---

[1] The notice phase "is also referred to as conditional certification since the decision
may be reexamined once the case is ready for trial." Morgan, 551 F.3d at 1261.

[2] The allegations contained in these affidavits need not meet traditional admissibility
standards applicable to those materials offered in support of a motion for summary
judgment.  See, e.g., Reyes v. AT & T Mobility Services LLC, 759 F. Supp. 2d 1328,
1331 (S.D. Fla. 2010) ("In light of the general leniency with which I must approach
Plaintiff's underlying motion for conditional class certification, … applying Rule 56
standards to the challenged paragraphs may be too strict at this preliminary stage.");
White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 368 (E.D.Tenn.2006) ("affidavits
submitted in support of a motion for conditional certification pursuant to § 216(b)
need not meet the standard set forth in Rule 56(e). To require more at this stage of
litigation would defeat the purpose of the two-stage analysis.").  This is consistent
with the evidentiary standard used by courts in the Eleventh Circuit when
considering class certification under Rule 23.  See, e.g., Fisher v. Ciba Specialty
Chemicals Corp., 238 F.R.D. 273, 279 (S.D. Ala. 2006) ("Courts confronted with
Rule 23 issues may consider evidence that may not ultimately be admissible at
trial.").

314691, *9 (M.D. Ala. Jan. 30, 2012)) (internal quotation marks omitted) ("'Hipp envisions that the certification process will begin early in the litigation prior to discovery'").   Because conditional certification precedes discovery, "plaintiffs [have] some leeway in proof at the initial stage." Pickering, 2012 WL 314691, at *9. Indeed, the merits of the case are not evaluated at the conditional certification stage, nor does the court make determinations regarding the credibility of particular affiants.  See, e.g., Kreher v. City of Atlanta, Ga., 2006 WL 739572, * 4 (N.D. Ga. Mar. 20, 2006) (quoting Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54–55 (S.D.N.Y. 2005)); Longcrier, 595 F.Supp.2d at 1237 (observing that it is "manifestly inappropriate" to make credibility determinations at the conditional certification stage).  Ultimately, "all factual questions and issues of credibility must be resolved in favor of the moving party in a motion for conditional certification. Monroe, 257 F.R.D. at 638-39 (citing Scott v. Heartland Home Finance, Inc., 2006 WL 1209813, *3 (N.D. Ga. May 3, 2006)).

If the court finds that the plaintiff and potential class members are "similarly situated," then the class is conditionally certified and notice of the action is sent to potential class members. Id. "After being given notice, putative class members have the opportunity to opt-in. The action proceeds throughout discovery as a

9

representative action for those who opt-in." Morgan, 551 F.3d at 1259 (citing Hipp, 252 F.3d at 1218).

The second stage, referred to as the "decertification phase," is triggered by an employer's motion for decertification after discovery has been concluded. Morgan, 551 F.3d at 1261. At the decertification stage, the court examines the evidence produced during discovery and revisits its factual determination as to whether the claimants are similarly situated. Id.; Hipp, 252 F.3d at 1218. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. Hipp, 252 F.3d at 1218.

In light of this two-tiered framework, "[t]he key to starting the motors of a collective action is a showing that there is a similarly situated group of employees." Morgan, 551 F.3d at 1259. As the court in Hipp made clear, "the similarly situated requirement is not particularly stringent". Hipp, 252 F.3d at 1214. In order to demonstrate that a group of similarly situated employees exists, a plaintiff must only show that his position is similar – not identical – to the positions held by the putative class members.[3] Id. at 1218. "[T]he 'similarly situated' requirement of § 216(b) is

---

[3]    While a plaintiff is not required to demonstrate the existence of an illegal pay practice or policy at the conditional certification stage, Grayson, 79 F.3d 1086, 1095 (11th Cir. 1996), he may do so as a means of meeting the "similarly situated" standard. See, e.g., Longcrier v. HL-A Co., Inc., 595 F. Supp. 2d 1218, 1236 (S.D. Ala. 2008) (quoting Russell v. Illinois Bell Telephone Co., 575 F.Supp.2d 930, 933

more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." Id. at 1219 (quoting Grayson v. K Mart Corp., 79 F.3d 1086, 1095 (11th Cir. 1996)) (some quotation marks omitted). The court's analysis at this first stage, therefore, "typically results in 'conditional certification' of a representative class." Rindfleisch v. Gentiva Health Services, Inc., 22 F. Supp. 3d 1295, 1302 (N.D. Ga. 2014) (quoting Hipp, 252 F.3d at 1218) (internal quotation marks omitted).

As a final prerequisite to conditional certification, the Eleventh Circuit has held that "the district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." Dybach v. State of Fla. Dept. of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiffs have the burden of demonstrating a reasonable basis for the court to conclude that other similarly situated individuals are interested in joining the collective action. Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir.1983). However, this showing of interest can

_____

(N.D. Ill. 2008) ("a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."). As this Court has noted, a "collective action is particularly appropriate when it permits the 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.'" McCray v. Cellco Partnership, 2011 WL 2893061, *1 (N.D. Ga. Apr. 8, 2011) (quoting Hoffmann-La Roche, 493 U.S. at 170).

11

be made in any number of ways:  "[e]vidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees."  <u>Davis v. Charoen Pokphand (USA), Inc.</u>, 303 F.Supp.2d. 1272, 1277 (M.D. Ala. 2004).  Courts in this Circuit have held that "for purposes of deciding [a] motion for conditional collective action certification, the already-filed consents to opt-in [establish] that there [are] persons … who would join in [the] suit if they had notice of the suit." <u>Billingsley v. Citi Trends, Inc.</u>, 2013 WL 246115, *2 (N.D. Ala. Jan 23, 2013); <u>see also</u> <u>Brooks v. A Rainaldi Plumbing, Inc.</u>, 2006 U.S. Dist. LEXIS 89417 (M.D. Fla. Dec 8, 2006) (noting that "even a single affidavit or consent to join submitted by another individual stating that they wish to join the action is enough to show interest"); contrast <u>Haynes</u>, 696 F.2d at 887 (showing of interest insufficient where the "judge had before him only counsel's unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores.").

## C. The Plaintiff Has Amply Met his Burden of Production and Made a Modest Factual Showing that a Class of Similarly Situated Individuals Exists.

Plaintiff has amply satisfied his modest burden of showing that a group of similarly situated employees exists.  Importantly, Plaintiff is not required to show that all cable installation technicians he seeks to represent were *identically* situated:

"variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage." Scott v. Heartland Home Finance, Inc., 2006 WL 1209813, *3 (N.D. Ga. May 3, 2006); see also Kerce, 575 F. Supp. 2d at 1365 ("Class members' claims need only be similar, not identical.").

For example, the court in Vondriska found that "Plaintiff has met the lenient notice stage standard that there are similarly situated employees who desire to opt in" where "the employees' pay provisions are similar in that they are all compensated by commissions. Although there are variations in job titles and job duties, the record evidence shows that there is a uniform class of employees whose primary duty is selling loans." Vondriska v. Premier Mortg. Funding, Inc., 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007); (see also Pendlebury v. Starbucks Coffee Co., 2005 WL 84500 (S.D. Fla. Jan. 3, 2005) (granting conditional certification to store managers despite some differences in job duties). The court in Longcrier granted conditional certification on the basis that "Plaintiffs have adequately and sufficiently demonstrated that other hourly employees at [defendant] are similarly situated to them, in the sense that they are subject to common policies, practices or plans of HL–A that allegedly violate the FLSA." Longcrier, 595 F. Supp. 2d at 1236.

As stated above, because discovery has not yet taken place, the inquiry at the conditional certification stage is typically based on pleadings and affidavits. Hipp, 252 F.3d at 1218; see also Kerce, 575 F.Supp.2d at 1358 ("Where a plaintiff has demonstrated a reasonable basis for the allegations of the complaint by filing declarations and consents from class members, a collective action is authorized, and notice should be issued."); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 362 (M.D. Ala. 1999) ("This burden [of showing similarly situated employees exist], which is not heavy, may be met by detailed allegations supported by affidavits."). In this case, Plaintiff has submitted three declarations showing that he and other cable installation technicians across three states had similar job duties, similar schedules, and the same pay structure. See Exh. C, ¶ 2; Exh. D, ¶ 2; Exh. E. ¶ 2. Furthermore, Plaintiff has demonstrated that all cable installation technicians were subject to Defendants' common policy of time shaving, which was imposed by FTS Regional Directors (Exh. E, ¶¶ 5-6), and were not paid for all hours worked, and, as a result, were not paid all minimum and overtime wages due under the FLSA. Exh. C, ¶¶ 5, 12-13; Exh. D, ¶¶ 6-7. Thus, Plaintiffs have "presented evidence that FTS implemented a company-wide time shaving policy that required technicians to systematically underreport their overtime hours. Managers told or encouraged technicians to underreport time or even falsified timesheets themselves." 2016 WL

814329, at *2; see also Longcrier, 595 F. Supp. 2d at 1236.  In addition, in this case, the Court has the benefit of filings and decisions in the Monroe v. FTS case, referenced elsewhere in this Memorandum, which sheds further light on the duties and pay structures of the technicians, as well as defendants' common policy of not paying technicians for all hours worked.  See generally Monroe v. FTS USA, LLC, 2016 WL 814329, at *2.

Finally, based on the present record, the Court can be satisfied that there are other similarly situated workers who would be interested in opting in to this action. Dybach, 942 F.2d at 1567-68.  Courts in this circuit have granted conditional certification of a collective action upon the showing of a single additional employee who wishes to opt into the lawsuit. See, e.g., Guerra v. Big Johnson Concrete Plumbings, Inc., 2006 WL 2290512, *4 (S.D. Fla. May 17, 2006) (certifying collective action class when only one other individual had opted in); see also Riddle, 2009 WL 3148768, at *3-4 (relying on two declarations in granting conditional certification and finding that "three opt-in plaintiffs at this point sufficiently demonstrates an interest by other employees to opt-in to the suit."); Bivings v. Euramex Mngmt. Group, LLC, No. 1:12-cv-03591-CAP, at 9 (N.D. Ga. April 5, 2013) (granting conditional certification based on the declarations of the named plaintiff and two other opt-in plaintiffs). Courts have also conditionally certified a

class of employees for minimum wage and overtime claims under the FLSA based in part on materials from a related case, and without identifying the number of opt-ins.  See Barron v. Henry County School System, 242 F.Supp.2d 1096 (M.D. Ala. 2003).

In this case, Plaintiff has submitted the declaration and opt-in form of another technician; the two declarations identify a group of other similarly situated technicians, spread across different locations, who may wish to join this action.  See Exh. C ¶¶ 3, 5, 8; Exh. D, ¶¶ 3, 8.  Plaintiff also submits the declaration of a former Field Supervisor who confirms that many other technicians were subjected to Defendants' company-wide time-shaving policy.  See Exh. E.  Finally, the Monroe case, in which close to 300 technicians opted in, is a further demonstration of interest among technicians.[4]  In light of the interest in the prior case, the opt-in that has been filed in this case, and the identification of a large group of other FTS technicians who were subject to the identical time shaving policy, the District Court can be satisfied that after Notice is provided, additional similarly situated employees will join this action.

---

[4]     In fact, the Plaintiffs in Monroe obtained most of their opt-ins after conditional certification was granted and notice went out.  Compare Monroe, 257 F.R.D. at 638 (granting conditional certification based on affidavits of named Plaintiffs and five opt-in Plaintiffs) with Monroe, 763 F. Supp. 2d at 985 ("over 300 plaintiffs have now opted into the action").

**D. The Proposed Notice to Potential Opt-In Class Members Is Appropriate.**

Congress' purpose in authorizing § 216(b) collective actions was to avoid multiple lawsuits where numerous employees have been harmed by a common violation of the FLSA.  See Hoffman-La Roche, 493 U.S. at 170 (describing benefits of collective action under Age Discrimination in Employment Act).  As the Supreme Court has noted, "[t]hese benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  Id.  Court authorized notice also prevents "misleading communication."  Id. at 172.

In the instant case, Plaintiff's proposal for court-approved notices to potential opt-in plaintiffs (Exh. A to Plaintiff's Motion for Conditional Certification) meets the timeliness, accuracy and informational requirements established by the Supreme Court in Sperling.  See id. at 172.  The proposed notice describes the lawsuit, informs all individuals who have worked as cable installation technicians for UniTek and FTS of their opportunity to "opt-in," instructs them how to "opt-in," and notifies them of the effect of their decision to "opt-in."  (See Exh. A to Plaintiff's Motion for Conditional Certification).

The proposed notice is also appropriate in its scope.  Courts have frequently granted conditional certification of classes similar in scope to Plaintiff's proposed class.  See Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001) ("Liberty National emphasizes that Plaintiffs in this case worked in different geographical locations. This factor is not conclusive. The plaintiffs in *Grayson* worked in several states, and the court still held that they met the similarly situated requirement. 79 F.3d at 1091."); see also  Curtis v. Time Warner Entm't-Advance/Newhouse P'ship, 2013 WL 1874848, *5-*6 (D. SC May 3, 2013) (authorizing notice to nationwide class of potential plaintiffs who worked in South Carolina, New York, Charlotte, Raleigh, and other locations); Schroeder v. Humana, Inc., 2012 WL 5931886, *6 (E.D. Wis. Nov. 27, 2012) (quoting Kelly v. Bluegreen Corp., 256 F.R.D. 626, 631 (W.D. Wis. 2009)) ("Where an apparent company-wide policy is behind the alleged FLSA violations, the plaintiff seeking certification for a company-wide class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations.").  Furthermore, the three-year notice period is appropriate at this stage, since Plaintiffs have alleged that Defendants have willfully violated the FLSA, and the adverse jury verdict from 2011 gave Defendants unequivocal notice that their policy was unlawful.  See First Amended Complaint,

ECF No. 12, ¶ 21; <u>Abdul-Rasheed v. KableLink Commun., LLC</u>, 8:13-CV-879-T-24, 2013 WL 5954785, at *3 (M.D. Fla. Nov. 7, 2013) ("At this early stage of the proceedings, the Court concludes that Plaintiff's allegation is sufficient to support his request for a three-year period in the Court-authorized Notice."); <u>Bobbitt v. Broadband Interactive, Inc.</u>, 8:11-CV-2855-T-24, 2012 WL 1898636, at *7 (M.D. Fla. May 23, 2012) ("Plaintiffs have alleged in their amended complaint that BBI willfully violated the FLSA. At this early stage of the proceedings, the Court concludes that Plaintiffs' allegation is sufficient to support their request for a three-year period in the Court-authorized notice.").

Finally, Plaintiffs propose that the notices and opt-in consent forms be sent via First Class Mail and e-mail to all current and former cable installation technicians who have worked for Defendants in the Southeastern United States within the past three years, and that the potential opt-in plaintiffs who desire to participate in this lawsuit be provided ninety (90) days from the date of mailing in which to file their consent forms.  This request is consistent with established practice under the FLSA. <u>See</u>, <u>e.g.</u>, <u>Hoffman-LaRoche</u>, 493 U.S. at 169; <u>Butler</u>, 876 F. Supp. 2d at 575 ("Notice periods may vary, but numerous courts around the country have authorized ninety day opt-in periods for collective actions.") (citations omitted); <u>Harris v. Performance Transp., LLC</u>, 8:14-CV-2913-T-23EAJ, 2015 WL 1257404, at *6

(M.D. Fla. Mar. 18, 2015) ("courts routinely grant ninety-day opt-in periods.");

Alequin v. Darden Restaurants, Inc., 12-61742-CIV, 2013 WL 3939373, at *8 (S.D.

Fla. July 12, 2013) ("Common practice provides an opt-in period of ninety days from

the date of notice."); Fiore v. Goodyear Tire & Rubber Co., 2:09-CV-843, 2011 WL

867043, at *4 (M.D. Fla. Mar. 10, 2011).   In addition, courts have routinely

authorized the issuance of notice by e-mail.  Collado v. J. & G. Transport, Inc., 14-

80467-CIV, 2014 WL 5390569, at *5 (S.D. Fla. Oct. 23, 2014) ("Defendants shall

within fourteen (14) days provide to Plaintiffs each putative class member's name,

address, telephone number, fax number, e-mail address, and date of birth.");

Gonzalez v. TZ Ins. Sols., LLC, 2014 WL 1248154, at *6 (M.D. Fla. Mar. 26, 2014)

("The Court determines that it is appropriate to furnish Class Notice via first class

mail and via non-TZ Insurance email."); Stuven v. Texas de Brazil (Tampa) Corp.,

2013 WL 610651, at *6 (M.D. Fla. Feb. 19, 2013) ("The Court is not persuaded that

notice by email is too intrusive, and will permit notice to be made in this manner.");

Cooper v. E. Coast Assemblers, Inc., No. 12–80995–CIV, 2013 WL 308880, at *3

(S.D.Fla. Jan.25, 2013) (approving notice by email and mail); see also Vaughn v.

Rescue Rangers, LLC,  3:15-cv-0056-JAG, Dkt. 30 (Order), p. 1 (E.D. Va. Jan. 13,

2016) (ordering Defendants to produce contact information, including e-mail

addresses, for potential plaintiffs) Gerges v. Enterprise Systems Software, LLC,

3:15-cv-01816-JZ, Dkt, 19, p. 2 (Order approving Stipulation for Conditional Certification) (N.D. Ohio Oct. 27, 2015) (Defendants are to provide spreadsheet with contact information, including e-mails, for potential plaintiffs).

## CONCLUSION

Plaintiff has amply shown that notice is appropriate at this stage of the case. Accordingly, Plaintiff respectfully requests that the Court

(1) Conditionally certify this action as a collective action under 29 U.S.C. §216(b); and

(2) Order that notice be issued to all cable installation technicians who have worked for Defendants during the last three years.

Dated:        March 28, 2016.

s/John L. Mays
_____
John L. Mays
Georgia Bar No. 986574
MAYS & KERR LLC
235 Peachtree Street NE
North Tower | Suite 202
Atlanta, Georgia 30303
(404) 410-7998 (office)
(404) 855-4066 (facsimile)
john@maysandkerr.com

Harold L. Lichten
Matthew W. Thomson
Lichten & Liss-Riordan, P.C.

729 Boylston St., Ste. 2000
Boston, MA 02116
(617) 994-5800 (office)
(617) 994-5801 (facsimile)
hlichten@llrlaw.com
mthomson@llrlaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE AND SERVICE

Pursuant to Local Rules 5.1(C) and 7.1(D), I certify that the foregoing is typewritten using 14-point Times New Roman font and filed using the Court's CM/ECF electronic filing system, which will provide notice of such filing to all counsel of record.

s/ John L. Mays