IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH TAYLOR, individually and on behalf of all other similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:15-cv-04461-LMM |
| v. | ) ) ) | |
| FTS USA, LLC, and Unitek USA, LLC | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## JOINT MOTION FOR SETTLEMENT APPROVAL

In this action, named Plaintiff Joseph Taylor and a group of Opt-in Plaintiffs were employed by FTS USA, LLC ("FTS") to perform cable television installation and repair, and they seek unpaid overtime and minimum wage damages under the Fair Labor Standards Act ("FLSA") based on their allegations that they were not paid for all hours worked.  Defendants FTS and UniTek USA, LLC (collectively, "Defendants") deny these allegations and have asserted various affirmative defenses. Defendants expressly deny any and all liability to Plaintiffs, and have opposed any collective treatment of Plaintiffs' claims. The Parties agree that neither the Settlement Agreement nor this Motion constitute an acknowledgment or admission

of any liability or wrongdoing by the Defendants, who desire to avoid further litigation and the costs, legal fees, and inconvenience attendant thereto. Given the large number of disputed issues in this case, and the uncertainty and cost of continued litigation, the Parties have reached a settlement and they jointly seek approval of the Settlement Agreement attached hereto as Exhibit 1 (hereinafter, the "Settlement Agreement" or "Agreement").

The Settlement Agreement will pay settlement funds to 74 FLSA Opt-in Plaintiffs to fully resolve the claims that they have asserted in this action.  This settlement was negotiated after nearly two years of litigation and a full day of mediation with Hon. Diane M. Welsh (Ret.), who is experienced in mediating wage and hour collective actions of this nature.  The total settlement fund is $170,000, and after payment of attorney's fees and costs, the 74 Opt-in Plaintiffs who have actively prosecuted their claims in this action by responding to Defendants' written discovery requests ("Responding Opt-in Plaintiffs")[1] will receive on average more than 50% of the unpaid wages that they seek in this action, with an average settlement payment of more than $1,265. Under no circumstances will any of the settlement funds revert

---

[1]     Two of the Responding Opt-in Plaintiffs were in the process of responding to discovery while the Mediation occurred and the settlement materials were prepared. The Parties have agreed that these individuals will be considered "Responding Opt-in Plaintiffs" for purposes of the Settlement and the FLSA release.

to Defendants in the event of uncashed settlement checks.  Although, as described below, 117 individuals opted-in to the case filed by named Plaintiff Joseph Taylor, 44 of those individuals would, under the Agreement, have their claims dismissed without prejudice because they failed to respond to Court-ordered discovery ("Non-Responding Opt-in Plaintiffs").  During the discovery process, these 44 individuals did not respond to written discovery when it became apparent that many of them had claims that fell outside the statute of limitations, some did not have overtime or minimum wage claims that they wished to pursue, some declined to participate in the Court-ordered discovery process and stopped communicating with their attorneys, while others could not be located at all despite repeated phone calls, emails, and letters.  Through this Motion, Defendants request dismissal of these Non-Responding Opt-in Plaintiffs' claims without prejudice.  The named Plaintiff, Responding Opt-in Plaintiffs, and Plaintiffs' counsel do not oppose this request.

As discussed below, the Parties hereby request that the Court enter an Order in the form attached hereto as Exhibit 2, (1) approving the settlement, (2) dismissing with prejudice the 74 Responding Opt-in Plaintiffs' claims with prejudice, and (3) dismissing without prejudice the claims of the 44 Non-Responding Opt-in Plaintiffs who did not respond to the Court-ordered written discovery requests.

## I.   PROCEDURAL BACKGROUND AND SUMMARY OF SETTLEMENT TERMS

Plaintiff Joseph Taylor instituted this action against Defendants for alleged unpaid wages, and later sought and obtained conditional certification of a collective action under the FLSA, 29 U.S.C. § 201 *et seq.*  An additional one hundred seventeen (117) individuals filed opt-in consent forms joining this lawsuit.   The Opt-in Plaintiffs' primary allegation is that they performed work "off-the-clock" that was not recorded by Defendants, and that this resulted in unpaid minimum wage and overtime wages under the FLSA.   Defendants denied Plaintiffs' allegations and asserted various affirmative defenses to Plaintiffs' claims, and opposed any collective treatment of Plaintiffs' claims. Defendants also expressly deny herein any and all liability to Plaintiffs.

Over the past twelve months the Parties have engaged in substantial written discovery.   Defendants have produced, and Plaintiffs' counsel have reviewed, over 17,000 pages of documents related to Opt-in Plaintiffs' work.   Seventy-four Opt-in Plaintiffs have responded to written discovery requests propounded by Defendants, as required under the Court's Order (Dkt. 65).

Notwithstanding this aforementioned Court Order, the remaining 44 Opt-in Plaintiffs did not respond to Defendants' written discovery requests for a variety of reasons.   The claims of 19 of these Non-Responding Opt-in Plaintiffs fall outside the

three-year statute of limitations of the FLSA, so these individuals do not appear to have live FLSA claims that they could pursue in this action and therefore they did not respond to discovery. An additional 10 Non-Responding Opt-in Plaintiffs have communicated with Plaintiffs' counsel, and the circumstances of their employment indicate that they have little or no unpaid overtime damages during the relevant statutory period, and these individuals also did not respond to discovery. Thirteen Non-Responding Opt-in Plaintiffs were completely unresponsive, despite Plaintiffs' counsel's repeated efforts to communicate with these individuals via e-mail, telephone, and regular mail, through which Plaintiffs' counsel has explained the Opt-in Plaintiffs' discovery obligations and attempted to obtain their compliance with the Court's Order requiring all Opt-in Plaintiffs to respond to written discovery.  The remaining 2 Non-Responding Opt-in Plaintiffs have communicated with Plaintiffs' counsel, and have recently expressed their intention to voluntarily dismiss their claims and withdraw from the action (which will now be accomplished through Defendants' unopposed motion to dismiss their claims without prejudice).

As part of Plaintiffs' discovery obligations, they also provided Defendants with a comprehensive damages analysis based on a week-by-week assessment of

each Opt-in Plaintiff's hours, compensation, and alleged "off-the-clock" worktime.[2]

After serving this damages analysis, the Parties were preparing to conduct motion practice and depositions; however, prior to engaging in discovery motion practice and conducting depositions, the Parties agreed to attend non-binding mediation with Hon. Diane M. Welsh (Ret.) of JAMS in Philadelphia, Pennsylvania.

The Court entered a stay of this action on September 22, 2017, and the Parties attended mediation on November 9, 2017.  In attendance at the mediation were the named Plaintiff Joseph Taylor, accompanied by his counsel, as well as a corporate representative of Defendants and Defendants' counsel.  At mediation, the Parties agreed to settle the claims of the 74 Responding Opt-in Plaintiffs for a non-reversionary settlement fund of $170,000, with the stipulation that Defendants would move to dismiss all claims of the 44 Non-Responding Opt-in Plaintiffs without prejudice, with the named Plaintiff, the Responding Opt-in Plaintiffs who are members of the settlement class, and Plaintiffs' counsel agreeing not to oppose this Motion.

The settlement fund would be distributed as follows:

---

[2] Plaintiffs' counsel undertook manual data entry of tens of thousands of data points related to each Opt-in Plaintiff's dates of employment, weekly pay, and the hours worked each week as reflected on their weekly paystubs.

- $93,629 in non-reversionary settlement shares to 74 Responding Opt-in Plaintiffs;

- $6,000 for a service payment to the named Plaintiff;

- $22,371 for reimbursement of actual litigation expenses incurred by Plaintiffs' counsel, comprised of mediator's fees, costs of FLSA notice distribution, data entry costs, filing fees, and travel reimbursement;

- $48,000 for attorney's fees (approximately 28% of the gross settlement fund).

Plaintiffs' counsel will mail the Responding Opt-in Plaintiffs' settlement checks directly to their clients. Plaintiffs' counsel has been in close contact with these individuals, and the Responding Opt-in Plaintiffs have responded to written discovery and continue to update counsel with any changes in their contact information. For any checks that are returned as undeliverable, Plaintiffs' counsel will perform a diligent search through online databases to locate an updated address for the Responding Opt-in Plaintiff so that the check can be re-mailed. As a result, it is unlikely that any settlement checks will remain uncashed. In the event that Plaintiffs' counsel is unable to reach any Responding Opt-in Plaintiffs to provide their settlement check, the checks will be voided after 120 days. The funds from any voided checks will <u>not</u> revert to Defendants, but will instead be given to a *cy pres* beneficiary – Habitat for Humanity.

As discussed below, this Agreement resolves a *bona fide* and disputed claim concerning Plaintiffs' entitlement to payment for back wages under the FLSA, and

the Settlement Agreement represents a fair and reasonable compromise of the claims that were alleged.   In addition, the Parties believe that the certainty of settlement is better than further litigation and the costs, legal fees, and inconvenience attendant thereto coupled with the uncertain outcome of protracted litigation.

## II.   ARGUMENT

### A. Standard for Settlement Approval under the FLSA.

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement.   Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor, 679 F.2d 1350, 1353 (11th Cir. 1982).

When parties bring a proposed settlement of an FLSA claim before a court, the Court must scrutinize the settlement to determine whether it is a fair and

reasonable resolution of a *bona fide* dispute. <u>Lynn's Food</u>, 679 F.2d at 1354-55. If a settlement in an FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." <u>Id.</u> at 1354. The Court "must take an active role in approving the settlement agreement to ensure that it is not the result of the employer using its superior bargaining position to take advantage of the employee." <u>Rakip v. Paradise Awnings Corp.</u>, 514 F. App'x 917, 919-20 (11th Cir. 2013). "The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace." <u>See Wingrove v. D.A. Techs., Inc.</u>, 2011 WL 7307626, at *1 (N.D. Ga. Feb. 11, 2011), <u>report and recommendation adopted</u>, 2011 WL 7324219 (N.D. Ga. Feb. 14, 2011) (quoting <u>Dees v. Hydradry, Inc.</u>, 706 F. Supp. 2d 1227, 1237 (M.D. Fla. 2010)).

The Settlement Agreement both meets the requirements for fairness and reasonableness with respect to the Opt-in Plaintiffs and furthers the implementation of the FLSA.

### B. The Settlement Resolves a Bona Fide Dispute.

The Settlement Agreement reflects the compromise of *bona fide* disputes related to the merits as well as collective treatment of the Opt-in Plaintiffs' claims.

For example, while Plaintiffs contend that they were required to work "off-the-clock" because they were discouraged from reporting all their worktime, or had their timesheets altered by supervisors in order to underreport their time, Defendants argue that they maintained lawful and comprehensive policies that encouraged all employees, including Opt-in Plaintiffs, to accurately record all worktime, and then paid for all overtime hours as required by the FLSA.  See Estrada v. FTS USA, LLC, 688 F. App'x 830 (11th Cir. 2017) (affirming summary judgment in FTS' favor on cable technician's FLSA claim).  After evaluating the timekeeping and payroll records for all Opt-in Plaintiffs and the Interrogatory Responses of Responding Opt-in Plaintiffs, the Parties agree that significant factual questions remain with respect to liability and damages under Plaintiffs' theory.  Defendants also maintain that collective action treatment of the Opt-in Plaintiffs' claims is not appropriate under the FLSA and that individualized questions and issues related to each Opt-in Plaintiffs' claims would have required decertification of the collective action. Plaintiffs intended to oppose Defendants' decertification motion because they believe that collective action treatment is appropriate, but the outcome of such a motion is far from certain given that the Opt-in Plaintiffs worked in a variety of locations across the country and the experiences of Opt-in Plaintiffs were not identical by any means.

### C. The Monetary Terms and the Release Contained in the Settlement Agreement are Fair to Plaintiffs.

When using a three-year statute of limitations for Plaintiffs' FLSA claims and an overtime premium of one-half the employees' regular rate for each hour worked over forty, Plaintiffs calculate that the potential unpaid wage damages of the 74 Responding Opt-in Plaintiffs is $181,000. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1280 (11th Cir. 2008) (explaining that the statute of limitations in an FLSA action is three years for a "willful violation"), citing 29 U.S.C. § 255(a). Plaintiffs contend that this number reflects Plaintiffs' detailed, week-by-week calculations of the possible overtime and minimum wage damages for each Responding Opt-in Plaintiff were they eventually successful at trial.  Thus, the $170,000 settlement requires Defendants to pay approximately 94% of the total, unliquidated damages that the Responding Opt-in Plaintiffs could have recovered if they continued to pursue this action and been successful at trial.  After reduction for attorney's fees, costs, and a service payment for the named Plaintiff (discussed below), the Responding Opt-in Plaintiffs will receive, on average, more than 50% of the unpaid wages that they sought in this case.

This discounted recovery reflects the fact that Defendants would have vigorously contested the merits of Plaintiffs' FLSA claims, including decertification, and that Defendants also contend that the shorter two-year statute of limitations

under the FLSA would have been appropriate, which would limit the Opt-in Plaintiffs' possible recovery. See 29 U.S.C. § 255(a). Were they successful at trial, Plaintiffs would have sought liquidated damages in an amount equal to their back pay award, but Defendants also would have argued that they acted in good faith and that liquidated damages were not appropriate.  See 29 U.S.C. § 216 (permitting liquidated damages); 29 U.S.C. § 260 (providing the employer with a safe harbor to avoid liquidated damages where actions were undertaken "in good faith").  Given the abundance of disputed issues, a settlement that requires Defendants to pay nearly the full amount of unliquidated FLSA damages during a three-year statutory period, and provides Opt-in Plaintiffs with more than 50% of their alleged unpaid wages, is a fair and reasonable compromise of the Responding Opt-in Plaintiffs' claims.

The distribution formula to determine each Responding Opt-in Plaintiffs' settlement payment is also fair and reasonable.  Plaintiffs propose to distribute the settlement funds pursuant to a formula whereby, after a deduction of the approved attorneys' fees, litigation costs, and service payment (discussed below), the remaining settlement funds will be distributed to Responding Opt-in Plaintiffs based on the number of weeks that they were employed as a technician for Defendants during the three-year statutory period applicable to each Opt-in Plaintiffs' claims. Thus, those individuals who worked longer for FTS, and who sought greater

12

damages under the FLSA, will receive more under the Settlement Agreement than those who worked for a shorter period of time.  Under this formula, the settlement shares will range from a minimum of $138 for an individual who worked only 4 weeks during the statutory period,[3] to approximately $5,500 for an individual who sought unpaid wages for 154 weeks of work.  The average settlement share is more than $1,265.

The scope of the releases in the Settlement Agreement is also fair and reasonable.  Responding Opt-in Plaintiffs will release only the "wage claims" that they may have against Defendants, and accompanying claims for attorney's fees and costs.  There is no release of prospective rights or non-wage claims, and there are no burdensome "confidentiality" provisions that would defeat the purposes of the FLSA.  Non-Responding Opt-in Plaintiffs will not release any claims that they may have against Defendants, as Defendants will seek dismissal of their claims without prejudice, and their rights will not otherwise be affected by the Settlement Agreement.

### D. The Proposed Service Payment to the named Plaintiff is Fair and Reasonable.

---

[3] There were six Responding Opt-in Plaintiffs who worked one week or less during the statutory period, and they will receive a minimum share of $50 per person.

13

The settlement also provides for a service payment of $6,000 to the named Plaintiff, Joseph Taylor, which is fair and reasonable.  Mr. Taylor was the lone named Plaintiff who brought this action and obtained conditional certification so that FLSA notice could be distributed to other FTS employees. He responded to substantial written discovery propounded by Defendants, which was far broader than the shorter written discovery requests served on Opt-in Plaintiffs.  He also travelled from Atlanta, Georgia to Philadelphia, Pennsylvania to attend mediation and assist his counsel in negotiating the settlement.  He provided significant assistance to Plaintiffs' counsel as they drafted the complaint, reviewed Defendants' document production, and conducted discovery, and the modest incentive award of $6,000 fairly recognizes the services that he has performed in advancing the Opt-in Plaintiffs' interests and the time that he dedicated to the lawsuit (which includes taking time off work and foregoing income in order to attend mediation).  This amount is consistent with service awards that have been approved in similar cases.[4]

---

[4] See, e.g., Miller v. Spence, 2016 WL 2350142, at *3 (S.D. Ala. May 3, 2016) (approving three incentive payments of $5,000 each in FLSA collective action); Su v. Elec. Arts, Inc., 2006 WL 4792780, at *5 (M.D. Fla. Aug. 29, 2006) (finding that $10,000 incentive payment to lead plaintiff was "fair and reasonable" in FLSA collective action), report and recommendation adopted, 2007 WL 2780899 (M.D. Fla. Sept. 20, 2007); Camp v. Progressive Corp., 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) (approving $10,000 incentive payment to lead plaintiff in FLSA action).

Courts have routinely recognized the importance of such awards in wage cases of this nature, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005). The service award is also justified where named Plaintiff Joseph Taylor will be asked to execute a general release of all claims as part of the proposed settlement, while Opt-in Plaintiffs will release only their wage related claims. See generally Teahl v. Lazy Flamingo, Inc., 2016 WL 4942067, at *3 (M.D. Fla. Aug. 31, 2016) (permitting payment of an additional $3,000 from settlement fund to named Plaintiff as consideration for executing a general release), report and recommendation adopted sub nom. Teahl v. The Lazy Flamingo, Inc., 2016 WL 4815530 (M.D. Fla. Sept. 14, 2016).

### E. The Attorney's Fees and Costs Provisions of the Settlement Agreement Fairly Compensate Plaintiffs' Counsel for the Time and Expense in Litigating This Matter.

The Settlement Agreement further provides for the payment of Plaintiffs' attorneys' fees and costs from the $170,000 settlement fund.  Plaintiffs' counsel advanced $22,371 in costs during the litigation and spent more than 250 hours advocating on behalf of the class.  Plaintiffs' counsel requests recovery of the costs

already incurred in pursuit of the Opt-in Plaintiffs' claims, the majority of which were spent on data entry services in support of Plaintiffs' damages analysis, mailing of the FLSA notice, and Plaintiffs' share of mediation fees. Plaintiffs' counsel incurred significant expense in hiring temporary employees to perform manual data entry of payroll information from the Opt-in Plaintiffs' paystubs, which was necessary to fulfill Opt-in Plaintiffs' discovery obligations to provide a detailed, week-by-week damages analysis.  Temporary employees were also hired to assist in locating and attempting to contact all Opt-in Plaintiffs to gather information from them in order to assist them in completing their discovery responses, which was extremely time-consuming and often had to be performed in the evenings after normal business hours when Plaintiffs' counsel would be able to reach these individuals (many of whom work during the day and were difficult to reach during working hours).

Plaintiffs' counsel also requests $48,000 in attorneys' fees. Counsel's contingency fee agreement provides for recovery of actual costs as well as fees equal to 33% of the gross recovery (i.e., $56,666 plus costs), but they are requesting less than they would be entitled to under their fee agreement.  Notably, the amount Plaintiffs' counsel will receive is also less than their fees when calculated under a lodestar method; even if all counsel for Plaintiffs (partners and associates) were

conservatively assigned a blended hourly rate of $350, their lodestar amount based on 250 hours of attorney time would be $87,500, which far exceeds the fee award requested under the settlement.  Further, Plaintiffs' counsel and their staff will be responsible for mailing the settlement checks to all Responding Opt-in Plaintiffs and answering these Opt-in Plaintiffs' inquiries regarding settlement administration, and they do not seek any additional costs or fees associated with these efforts. Given Plaintiffs' counsel's substantial experience in wage and hour litigation,[5] and the result achieved for the Opt-in Plaintiffs, the fee request is reasonable.

**F. Dismissal of Non-Responding Opt-in Plaintiffs.**

As a material part of the Settlement Agreement and pursuant to the sanctions permitted under Fed. R. Civ. P. 37, Defendants herein move the Court for an order dismissing the 44 Non-Responding Opt-in Plaintiffs who failed to comply with the

---

[5]    Attorney Harold Lichten, *pro hac vice* counsel for Plaintiffs, has been lead or co-counsel in numerous wage and hour cases in the United States, and has successfully argued cases arising under state and federal wage laws before the Seventh, Third, Eleventh, and First Circuit Courts of Appeal and the Supreme Courts of New Jersey and Massachusetts. See, e.g., Costello v. BeavEx, Inc., 810 F.3d 1045 (7th Cir. 2016) (affirming denial of defendant's motion for summary judgment and vacating District Court's denial of class certification in wage and hour action); Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir.2013) (reversing grant of summary judgment to Defendants in FLSA action); Hargrove v. Sleepy's, LLC, 220 N.J. 289, 106 A.3d 449 (2015); Schwann v. FedEx Ground Package Sys., Inc., 813 F.3d 429 (1st Cir. 2016); Chambers v. RDI Logistics, Inc., 65 N.E.3d 1 (Mass. 2016); Somers v. Converged Access, Inc., 911 N.E.2d 739 (Mass.2009).

Court's Order (Dkt. 65). Plaintiffs' counsel has represented and agreed in the Settlement Agreement that they have attempted to contact these individuals to comply with the Court's Order and they have been unable to reach them and/or they are non-responsive to such communications. The relief of dismissal without prejudice is not opposed by the named Plaintiff, Responding Opt-in Plaintiffs who are members of the settlement class, or Plaintiffs' counsel.

The Court's Order referenced above directed all opt-in Plaintiffs to "respond to the Interrogatories and Requests for Production of Documents" in accordance with a mandated schedule. Dkt. 65 at 1. However, to date, forty-four opt-in Plaintiffs have not provided answers to the Court-ordered interrogatories and document requests. Thus, as of today, all of the opt-in Plaintiffs who have failed to answer the discovery are in violation of a clear and unmistakable Court Order.

The Federal Rules of Civil Procedure permit courts to impose punitive sanctions, up to and including dismissal of an action, on a party that refuses to comply with a discovery order. Under Rule 37, "[t]he Court has a broad authority to dismiss actions." McCabe v. Daimler AG, No. 12-2494, 2015 WL 11215809, at *2 (N.D. Ga. Jan. 7, 2015) (citing Gratton v. Great Am. Commc'ns, 178 F.3d 1373, 1374 (11th Cir. 1999)). Specifically, Rule 37(b)(2)(A) lists the sanctions the Court may impose upon a party that "fails to obey an order to provide or permit discovery,"

18

including "**dismissing the action or proceeding in whole or in part**." Fed. R. Civ. P. 37(b)(2)(A)(v) (emphasis added). Indeed, a party plaintiff's failure to participate in discovery is cause for dismissal from this action. See McCabe, 2015 WL 11215809, at *2 (dismissing without prejudice plaintiff's claim where plaintiff failed to comply with Court's discovery request). Dismissal of the 44 Non-Responding Opt-in Plaintiffs is appropriate because their failure to comply with the Court's Order has prejudiced the Defendants and undermined "the integrity of the discovery process." Id. at *2.

As noted above, Plaintiffs' counsel admits that these Non-Responding Opt-in Plaintiffs have failed to produce all discovery and that they have not been able to reach these individuals to respond to the Court's Order and/or these individuals have been nonresponsive to such communications. The Non-Responding Opt-in Plaintiffs have essentially abandoned the litigation and, as part of this Settlement Agreement, they should be dismissed without prejudice from this action.

Dated:         December 6, 2017.

Respectfully submitted,

_s/ John L. Mays_____
John L. Mays, Georgia Bar No. 986574
Poole Huffman LLC
315 W. Ponce de Leon Ave., Suite 344
Decatur, Georgia 30030
Direct: (404) 855-0820
Tel: (404) 373-4008
Fax: (888) 709-5723
john@poolehuffman.com

Harold Lichten, Pro Hac Vice
Matthew Thomson, Pro Hac Vice
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800 (office)
(617) 994-5801 (facsimile)
hlichten@llrlaw.com
mthomson@llrlaw.com

_Attorneys for Plaintiff_

_s/ Colin D. Dougherty_____
Colin D. Dougherty _(pro hac vice)_
Pennsylvania Bar No. 88363
Jonathan D. Christman _(pro hac vice)_
Pennsylvania Bar No. 306634
FOX ROTHSCHILD LLP
10 Sentry Parkway, Ste. 200
P.O. Box 3001
Blue Bell, PA 19422
Telephone: (610) 397-6500
Facsimile: (610) 397-0450
cdougherty@foxrothschild.com
jchristman@foxrothschild.com

Glianny Fagundo-Toro
Georgia Bar No. 254033
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
gfagundo@taylorenglish.com

*Attorneys for Defendants*